# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ISRAEL ANTONIO GAITAN COREAS,

                      Petitioner,

    vs.

MARKWAYNE MULLIN, *et al.*,[1]

                 Respondents.

Case No.: 2:26-cv-00591-GMN-DJA

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Israel Antonio Gaitan Coreas's First Amended Petition for Writ of Habeas Corpus, (ECF No. 9). Federal Respondents Pamela Bondi, Michael Bernacke, Todd Lyons, and Kristi Noem filed a Response,[2] (ECF No. 11), to which Petitioner filed a Reply, (ECF No. 13).[3] Petitioner thereafter filed two Notices of Supplemental Authority, (ECF Nos. 14, 15).

For the reasons discussed below, the Court GRANTS the Petition.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of Homeland Security Markwayne Mullin is substituted for the currently named Kristi Noem, and Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi. The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

[2] Under LR IC 6-1 parties must refrain from including—or must partially redact, where inclusion is necessary—certain personal-data identifiers from all documents filed with the Court, unless the Court orders otherwise. *See* LR IC 6-1; *see also* Fed. R. Civ. P. 5.2(a). Upon review of Exhibit 1 to Federal Respondents' Response, (ECF No. 9), the Court finds that the exhibit contains personal-data identifiers and sensitive information that must be redacted, including Petitioner's birth date, fingerprints, and A-Number. Accordingly, the Clerk of Court is kindly directed to seal the exhibits to ECF No. 9. Moreover, Federal Respondents must file a redacted version of the exhibits on the docket by May 1, 2026, redacting any sensitive information or personal-data identifiers. Federal Respondents are instructed to file future documents in compliance with the text and spirit of LR IC 6-1 and FRCP 5.2(a) by redacting birth dates, fingerprints, A-Numbers, and passport numbers where applicable.

[3] Respondent John Mattos filed a separate Response, (ECF No. 12), indicating that he has no independent authority to release Petitioner, and thus takes no position on the relief sought.

## I.   BACKGROUND

Petitioner Israel Antonio Gaitan Coreas is a citizen of El Salvador who came to the United States in January 2023. (First Am. Pet. 5:24–25, ECF No 9).  Petitioner sought political asylum through the Customs and Border Protection One mobile application, ("CBP One App"), and was scheduled for an interview on January 30, 2023, at the Chapparal border facility. (*Id.* 5:25–6:2); (Notice to Appear at 7, Ex. A to Resp., ECF No. 11-2).  Petitioner was inspected at the Chapparal border facility and was thereafter paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). (First Am. Pet. 6:3–4); (Notice to Appear at 7, Ex. A to Resp.).

On December 11, 2024, Petitioner was detained by Immigration and Customs Enforcement, ("ICE"), and was placed into removal proceedings. (First Am. Pet. 6:8–9).  On March 27, 2025, IJ Glen Baker denied Petitioner's application for asylum and ordered Petitioner removed to El Salvador. (*See* Notice to Appear at 9–12, Ex. A to Resp.).  Petitioner thereafter appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which dismissed his appeal on July 17, 2025. (First Am. Pet. 6:11–13).  Petitioner then moved for a petition for review in the Ninth Circuit. (*Id.* 6:13–14).  The Ninth Circuit stayed Petitioner's order of removal on October 23, 2025, and Petitioner's petition for review remains pending. (*See* Ninth Circuit Order at 1, Ex. B to Resp., ECF No. 11-3).

## II.   LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., art. I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the

Constitution or federal law. 28 U.S.C.A. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Statutory Detention Scheme**

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101 *et seq.*, two statutory provisions generally govern the government's authority to detain noncitizens during the pendency of removal proceedings: 8 U.S.C. §§ 1225(b) and 1226. In *Jennings v. Rodriguez*, 538 U.S. 281 (2018), the Supreme Court explained these statutory provisions. The Court explained that § 1225 generally governs "at the Nation's borders and ports of entry, where the Government must determine whether [a noncitizen] seeking to enter the country is admissible." *Id.* at 287. In contrast, § 1226 "generally governs the process of arresting and detaining" noncitizens already "inside the United States." *Id.* at 288.

8 U.S.C. § 1225 authorizes the government to detain certain noncitizens seeking admission into the United States. *Id.* at 289. Section 1225(b) applies to "applicants for admission" to the United States, defined as a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings*, 583 U.S. at 287.

Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id.* (citing § 1225(b)(1)(A)(i)). Noncitizens who fall under § 1225(b)(1) are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Id.* (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Id.* Applicants for admission under either § 1225(b)(1) or § 1225(b)(2) are subject to mandatory detention and

may only be released on parole "for urgent humanitarian reasons or significant public benefit." *Id.* at 288 (citing § 1182(d)(5)(A)).

Noncitizens subject to detention under either sub-section of § 1225(b) may be temporarily released on humanitarian parole. *See Jennings*, 583 U.S. at 288. Humanitarian parole is authorized under 8 U.S.C. § 1182(d)(5)(A). Section 1182 provides that parole may be granted "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). The implementing regulations include another requirement for parole: the noncitizen must "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Once humanitarian parole under § 1182(d)(5) is terminated, the noncitizen is "returned to the custody from which he was paroled." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

## III.    **<u>DISCUSSION</u>**

Petitioner argues that he is detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1225, and therefore his continued detention without a bond hearing violates both the Due Process clause of the Fifth Amendment and the Immigration and Nationality Act ("INA"). (*See* First Am. Pet. 6:23–11:23). Petitioner further contends that ICE's policy of removing noncitizens to third countries with no notice or opportunity to seek fear-based protection violates his Fifth Amendment due process rights and constitutes arbitrary and capricious agency action under 5 U.S.C. § 706. (*Id.* 11:24–12:23).

Respondents first argue that this Court lacks jurisdiction over the First Amended Petition under 8 U.S.C. §§ 1252(b)(9), (g). (Resp. 5:9–9:8, ECF No. 11). Alternatively, Respondents assert that Petitioner is lawfully detained under 8 U.S.C. § 1231. (*Id.* 9:9–10:10).

The Court first determines whether it has jurisdiction before turning to the merits.

///

///

**A. Jurisdiction**

Respondents contend that the Court lacks jurisdiction over the First Amended Petition under §§ 1252(g) and (b)(9). (Resp. 5:9–9:8).  This Court has already rejected these arguments several times, including in *Hernandez-Luna v. Noem*, No. 2:25-CV-01818-GMN-EJY, 2025 WL 3102039, at *2 (D. Nev. Nov. 6, 2025), *Alverez Guerra v. Blanche, et al.*, No. 2:26-CV-00498-GMN-MDC, 2026 WL 949027 *2–4 (D. Nev. Apr. 7, 2026), and *Zarate v. Blanche*, No. 2:26-CV-00320-GMN-MDC, 2026 WL 1005872, at *1 (D. Nev. Apr. 14, 2026).  Federal Respondents do not offer any meaningful basis for why the Court's previous analysis does not preclude their arguments here.

The Supreme Court has given a "narrow reading" to § 1252(g). *Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025).  That provision "applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original).  The Court characterized § 1252(g) as a "discretion-protecting provision" aimed at "attempts to impose judicial constraints upon prosecutorial discretion." *Id.* at 485, 487.  So long as Petitioner's claim raises a "purely legal question" that "does not challenge the Attorney General's discretionary authority," this Court retains jurisdiction. *Ibarra-Perez*, 154 F.4th at 996 (quoting *United States v. Hovsepian*, 359 F.3d 1144, 1155 (9th Cir. 2004)) (internal quotations omitted).

Further, the caselaw upon which Respondents rely is unavailing.  Each of the cases cited by Respondents found that § 1252(g) foreclosed jurisdiction over claims seeking to enjoin *removal. See Rauda v. Jennings*, 55 F.4th 773, 777 (9th Cir. 2022) (finding no jurisdiction where petitioner sought to enjoin removal while pursuing administrative relief); *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297–98 (3d Cir. 2020) (same); *E.F.L. v. Prim*, 986 F.3d 959, 964–65 (7th Cir. 2021) (same); *Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268,

1272–74 (11th Cir 2021) (same); *Hamama v. Adducci*, 912 F.3d 869, 874–75 (6th Cir. 2018) (same).  Here, Petitioner seeks to challenge the legality of his detention, which is "plainly collateral" to the government's decision to execute his removal order. *Ibarra-Perez*, 154 F.4th at 996 (quoting *Kong v. United States*, 62 F.4th 608, 617 (1st Cir. 2023) (holding FTCA challenge to detention not barred by § 1252(g) because assertion of illegal detention collateral to ICE's decision to execute removal order)).  Thus, § 1252(g) does not strip this Court of jurisdiction over Petitioner's claims.

Second, Respondents' § 1252(b)(9) argument fares no better.  That provision provides that "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove [a noncitizen] from the United States" is only proper before the appropriate federal court of appeals in the form of a petition for review of a final removal order. 8 U.S.C. § 1252(b)(9).  Respondents contend that because Petitioner's claims here "arise directly out of" actions taken to remove him, § 1252(b)(9) deprives this Court of jurisdiction. (Resp. 8:20–21).  However, the Supreme Court rejected this exact reading of § 1252(b)(9) in *Jennings*, explaining that interpreting "arising from" to sweep in *all actions* taken to remove a noncitizen would "make claims of prolonged detention effectively unreviewable." 583 U.S. 281, 294 (2018).  Once more, "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process" and are not barred by § 1252(b)(9). *Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020).

Based on this analysis and the Court's previous decisions holding the same, the Court again concludes that 8 U.S.C. § 1225(g) and (b)(9) do not strip this Court of jurisdiction over this Amended Petition.[4]

---

[4] Not only has this Court rejected Federal Respondents' jurisdictional arguments under §§ 1252(g) and (b)(9) pertaining to petitioners seeking review of prolonged detention and denial of bond hearings, but these same

**B. Petitioner is Not Subject to Mandatory Detention Under § 1231(a)**

Respondents next argue that Petitioner's detention is lawful because he is subject to mandatory detention under 8 U.S.C. § 1231(a). (Resp. 9:9–10:10).  That provision provides that when a noncitizen is subject to a final order of removal, there is a 90-day "removal period" within which the noncitizen must be detained. 8 U.S.C. §§ 1231(a)(1)–(2).  That removal period begins "on the latest of the following:"

(i)   The date the order of removal becomes administratively final.

(ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

§ 1231(a)(1)(B).  Respondents contend that because Petitioner is subject to a removal order which is administratively final, these provisions apply, even though Petitioner's removal order was stayed by the Ninth Circuit pending review. (Resp. 10:7–9); (Ninth Circuit Order at 1, Ex. B to Resp.).  However, the Ninth Circuit has squarely rejected this argument, explaining that "§ 1231(a) does not provide authority to detain [a noncitizen] whose removal order is administratively final, but whose removal has been stayed by a court of appeals pending its disposition of his petition for review." *Prieto-*

---

arguments have also been rejected by every judge in this District and are unsupported by binding Ninth Circuit and Supreme Court precedent. *See Rodriquez v. Mullin, et al.*, No. 2:26-CV-00531-APG-NJK, 2026 WL 895685 (D. Nev. Apr. 1, 2026) (Chief Judge Gordon); *Maldonado Vazquez v. Feeley*, 805 F. Supp. 3d 1112 (D. Nev. 2025) (Judge Boulware); *Sarkisov v. Blanche, et al.*, No. 2:25-CV-02321-JAD-DJA, 2026 WL 949019 (D. Nev. Apr. 8, 2026) (Judge Dorsey); *Hernandez v. Mullin, et al.*, No. 3:26-CV-00219-ART-CSD, 2026 WL 937393 (D. Nev. Apr. 7, 2026) (Judge Traum); *Portillo v. Bondi*, No. 2:26-CV-00155-CDS-NJK, 2026 WL 800710 (D. Nev. Mar. 23, 2026) (Judge Silva); *Alkarori v. Nevada S. Det. Ctr.*, No. 2:25-CV-02567-MMD-MDC, 2026 WL 266756 (D. Nev. Feb. 2, 2026) (Judge Du, addressing only 8 U.S.C. § 1252(g)).

Federal Respondents are warned that any further seemingly identical arguments without any good faith arguments for extensions, modifications, or reversals of existing law or for creation of new law may subject them to Rule 11 sanctions. *See* Fed. R. Civ. P. 11(b)(2) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances the . . . legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law.").

*Romero v. Clark*, 534 F.3d 1053, 1059 (9th Cir. 2008).  Therefore, Petitioner here cannot be subject to mandatory detention under § 1231(a).

### C. Legal Basis for Detention

Petitioner argues that he is detained under § 1226(a), not § 1225(b)(2), and therefore his continued detention without a bond hearing violates the Due Process clause of the Fifth Amendment. (First Am. Pet. 7:3–9:4).  Specifically, Petitioner contends that because he was paroled into the United States and detained by ICE in the interior of the country, he cannot be classified as an "arriving alien" and thus § 1225(b) does not apply. (*Id.* 7:9–25).  The only basis for Petitioner's detention raised by Respondents is § 1231(a); indeed, Respondents do not address §§ 1225 or 1226 at all. (*See generally* Resp.).  Here, however, the Court need not reach the question of which statute applies to Petitioner's detention.  As explained below, the Court finds Petitioner's detention is unlawful regardless of the governing statute because his humanitarian parole under § 1182(d)(5)(A) was terminated in violation of the Due Process Clause of the Fifth Amendment.

### D. Humanitarian Parole

As explained above, applicants for admission face mandatory detention under § 1225 but may be released on parole "for urgent humanitarian reasons or significant public benefit," under 8 U.S.C. § 1182(d)(5)(A). *Jennings*, 583 U.S. at 287.  This exception to mandatory detention, often referred to as humanitarian parole, may be granted "only on a case-by-case basis." 8 U.S.C. § 1182(d)(5)(A).  Further, the implementing regulations require that a noncitizen "present neither a security risk nor a risk of absconding."  8 C.F.R. 212.5(b).  Thus, if a noncitizen has been granted humanitarian parole, it means that a DHS official decided that the individual did not pose a security or flight risk. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(b).

The agency can terminate humanitarian parole in two ways.  First, it terminates automatically if the noncitizen departs from the United States or "at the expiration of the time for which parole was authorized." 8 C.F.R. § 212.5(e)(1).  Second, if parole is not terminated automatically, either "the purpose for which parle was authorized" must have been accomplished or a DHS official with authority must decide that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) ("[W]hen the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled."). In such instances, the noncitizens must be provided with written notice of the parole termination. 8 C.F.R. § 212.5(e)(2)(i).

Regardless of the type of termination, once a noncitizen's parole has been terminated, implementing regulations require that "any order of exclusion, deportation, or removal previously entered *shall be executed*." 8 C.F.R. § 212.5(e)(2)(i) (emphasis added); *see also* 8 C.F.R. § 212.5(e)(2).  "If the exclusion, deportation, or removal order cannot be executed within a reasonable time, the [noncitizen] *shall again be released* on parole unless in the opinion of [a DHS official with authority] the public interest requires that the [noncitizen] be continued in custody."  8 C.F.R. § 212.5(e)(2)(i) (emphasis added).  Stated differently, unless detention is required for the timely removal of a noncitizen, continued detention following release on parole must be supported by individualized assessment by an authorized DHS official. *Id.*  Otherwise, implementing regulations require that a noncitizen be returned to humanitarian parole. *Id.*

**E.  Due Process**

Under the Fifth Amendment, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  Though noncitizens do not enjoy

constitutional protections outside the borders of the United States, once a noncitizen "enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.  Thus, "[i]t is well established that the Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

Petitioner here was paroled into the country in January 2023 under 8 U.S.C. § 1182(d)(5)(A). (First Am. Pet. 6:3–4); (Notice to Appear at 7, Ex. A to Resp.).  Several courts in the Ninth Circuit have concluded that when a noncitizen is paroled under § 1182, the government cannot summarily revoke that parole without offending due process. *See Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026) (collecting cases); *Mendez Oreilly v. Blanche*, No. 2:26-cv-00278-GMN-EJY, 2026 WL 1031192, at *3–5 (D. Nev. Apr. 16, 2026).  Rather, due process for "parole terminations requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination." *Araujo v. LaRose*, No. 25-cv-02942-BTM-MMP, 2025 WL 3278016, at *2 (S.D. Cal. Nov. 24, 2025) (citing *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1165 (S.D. Cal. 2025) (analyzing factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976))).  While not binding, the Court finds the reasoning in these cases persuasive and adopts it for the reasons discussed below.

### 1.  Due Process Protections in Revocation of § 1182 Parole

To determine whether detention violates due process, courts apply the three-part test set out in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1203–07 (9th Cir. 2022) ("Ultimately, *Mathews* remains a flexible test that can and must

account for the heightened government interest in the immigration detention context.").[5]  Under *Mathews*, "identification of the specific dictates of due process generally requires consideration of three distinct factors:" (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first *Mathews* factor considers the private interest affected by the government's ongoing detention of Petitioner without the opportunity for release on bond. *See Mathews*, 424 U.S. at 335.  Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529.  Further, the Supreme Court has recognized that a protected liberty interest may arise from a conditional release from physical restraint. *Young v. Harper*, 520 U.S. 143, 147–49 (1997).  In *Morrissey v. Brewer*, the Supreme Court explained that when placed on parole, "[t]he parolee has relied on at least an implicit promise that parole will only be revoked if he fails to live up to the parole conditions." 408 U.S. 471, 482 (1972).  Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.* at 481–84.

Here, after inspection at the Chapparal border facility in January 2023, Petitioner was paroled into the United States and has complied with all conditions of his parole. (First Am.

---

[5] The Ninth Circuit in *Rodriguez Diaz* "assumed without deciding" that the *Mathews* test applies in due process challenges to immigration detention. 53 F.4th at 1207.  However, the *Rodriguez Diaz* court noted that other circuits have applied *Mathews* in considering due process challenges to immigration detention. *Id.* at 1204–05 (citing *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020)).  The court also explained that the Ninth Circuit has regularly applied *Mathews* in due process challenges to removal proceedings. *Id.* at 1206 (citing *Cruz Pleitez v. Barr*, 938 F.3d 1141, 1145–46 (9th Cir. 2019); *Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1160–61 (9th Cir. 2004); *Martinez-de Bojorquez v. Ashcroft*, 365 F.3d 800, 805 (9th Cir. 2004).  Accordingly, the Court will apply the *Mathews* test here.

Pet. 6:3–7). These proceedings created a protectable expectation of Petitioner's continued liberty, and the Court thus finds that the first factor weighs in favor of Petitioner.

The second factor considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." *Mathews*, 424 U.S. at 335. The implementing regulations for humanitarian parole require that a noncitizen "present neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Thus, the initial determination that Petitioner should be paroled "reflects a determination by the government that [Petitioner] is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *see Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034 (N.D. Cal. 2025) ("[Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria."). Civil immigration detention is "nonpunitive in purpose and effect[,]" and is justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. *See Zadvydas*, 533 U.S. at 690. Thus, in order to re-detain Petitioner, the government "must be able to present evidence of materially changed circumstances— namely, evidence that the noncitizen is in fact dangerous or has become a flight risk." *Saravia*, 280 F. Supp. 3d at 1176.

The risk of erroneous deprivation of Petitioner's liberty interest is high where the government provides no justification for Petitioner's re-detention, and Petitioner has no opportunity to rebut that justification. *See Luo v. LaRose*, No. 25-cv-3848-LL-VET, 2026 WL 202872, at *3 (S.D. Cal. Jan. 27, 2026) (citing *Pinchi*, 792 F. Supp. 3d at 1035). This is especially true where the government need only show that the "purpose of [Petitioner's] parole has been served" in order to revoke that parole. 8 U.S.C. § 1182(d)(5)(A). The breadth of that

standard affords the government substantial discretion to re-detain Petitioner, which compounds the risk of erroneous deprivation. *See Escobar Salgado v. Mattos*, 809 F. Supp. 3d 1123, 1161 (D. Nev. 2025) (reasoning in the bond hearing context that "unreviewable" government direction to detain creates a high risk of erroneous deprivation).  It follows that the value of additional procedural safeguards, such as notice and an opportunity to be heard, is likewise high.

Here, Petitioner was not notified that his parole was terminated, nor was he afforded any means to challenge the revocation of his parole.  Further, Petitioner has no criminal record and has complied with all conditions of his parole. (First Am. Pet. 6:3–7).  While ICE officers had a warrant for Petitioner's arrest, it appears from the record that the warrant was based on a separate 2019 arrest warrant from El Salvador charging Petitioner with gang-related crimes. (I-213 at 2, Ex. A to Resp., ECF No. 11-2).  However, Petitioner denies ever participating in gang activity. (First Am. Pet. 3:16–17).  Indeed, as the BIA explained in it's Order dismissing Petitioner's appeal of his removal order, Petitioner was arrested in El Salvador for gang related crimes committed by his brother and was subsequently released. (*See* BIA Order at 2, Ex. A to Resp., ECF No. 11-2).  The value of providing the minimal due process guarantees of notice and an opportunity to be heard is especially high in situations like these where the government is mistaken about Petitioner's criminal history.  Had Petitioner here had an opportunity to set the record straight, 16 months of likely erroneous detention could have been avoided.

Further, given that the government conducted a background check on Petitioner in January 2023, they would have known about the existence of the warrant.  Yet, the government still made the decision to parole Petitioner, reflecting a determination "that [he] was neither a flight risk nor a danger to the community." *Pinchi*, 792 F. Supp. 3d at 1034.  The government's later decision to re-detain Petitioner thus presents a substantial risk of error and harm to

Petitioner's liberty interest, and the Court finds that the second *Mathews* factor weighs in favor of Petitioner.

The third and final *Mathews* factor considers the "government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal" noncitizens and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, the government's interest in detaining Petitioner without a hearing is low. *See Morrissey*, 408 U.S. at 483 (explaining that "the State has no interest in revoking parole without some informal procedural guarantees"). Further, in "immigration court, custody hearings are routine and impose a 'minimal' cost." *Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *8 (E.D. Cal. Nov. 22, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094–95 (E.D. Cal. 2025)). Indeed, "[i]f the government wishes to re-arrest [Petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019). Accordingly, the Court concludes that the third *Mathews* factor also weighs in favor of Petitioner.

The Court thus finds that all three of the *Mathews* factors weigh heavily in favor of Petitioner, and therefore Petitioner was entitled to both notice and an opportunity to be heard before his humanitarian parole under § 1182(d)(5)(A) could be revoked. Because Petitioner received neither here, the Court finds that the revocation of his parole violates his rights under the Due Process Clause of the Fifth Amendment.[6]

---

[6] Because the Court finds that Petitioner puts forth a successful argument under the Fifth Amendment right to due process, it need not determine whether the revocation of Petitioner's parole violates the INA.

Petitioner asks this Court to order his immediate release, or, in the alternative, to order that he receive a bond hearing immediately. (First Am. Pet. 13:7–9).  The federal habeas corpus statute "does not limit the relief that may be granted to discharge of the applicant from physical custody." *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).  "Its mandate is broad with respect to the relief that may be granted." *Id.*  "It provides that '[t]he court shall . . . dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C.A. § 2243).

Here, the specific harm suffered by Petitioner was the termination of his parole without notice and an opportunity to be heard in violation of the Due Process Clause of the Fifth Amendment.  Petitioner has been detained since December 11, 2024, despite receiving no process prior to his re-detention. (First Am. Pet. 3:6–8).  The Supreme Court has consistently held that "the Constitution requires some kind of hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  While a post-deprivation hearing may be appropriate in situations that urgently require arrest, absent evidence of such urgent concerns, a pre-deprivation hearing is required to satisfy due process. *Id.* at 128; *Ortega*, 415 F. Supp. 3d at 970.  No such concerns are present here— Petitioner has no criminal history, and as explained above, the 2019 arrest warrant would have been known to the government since Petitioner's inspection in January 2023.  Thus, "because the constitutional violation is the absence of *pre-deprivation* process, the proper remedy is to restore the status quo ante—that is, to return [Petitioner] to the conditions that existed before his unlawful detention." *Kirykovich v. Hernandez*, No. 2:26-cv-00695-JNW, 2026 WL 890459, at *4 (W.D. Wash. Apr. 1, 2026) (emphasis in original).  Further, a bond hearing would not adequately vindicate Petitioner's rights.  Indeed, ordering a hearing while Petitioner remains detained would reward the government for failing to provide Petitioner any process before detaining him. *See id.*  The Court therefore finds that the appropriate remedy here is immediate release subject to the conditions of Petitioner's prior parole.

**F. Third-Country Removal**

Petitioner next contends that ICE's policy of removing noncitizens to a third country with no notice or opportunity to seek fear-based protection violates his due process rights and constitutes arbitrary and capricious agency action in violation of the APA. (First Am. Pet 11:24–12:23). Respondents do not address this argument in their Response. (*See generally* Resp.).

As the Court previously found in *Cavieres Gomez v. Mattos*, No. 2:25-cv-00975-GMN-BNW, 2025 WL 3101994, at *6–7 (D. Nev. Nov. 6, 2025), Petitioner has a due process right to receive meaningful notice and an opportunity to present a fear-based claim to an IJ before being deported to a third country. "Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). "A 'noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation.'" *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. Aug. 21, 2025) (quoting *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x. 724, 725 (9th Cir. 2016) (non-precedential memorandum disposition). Thus, in accordance with the ample case law above, Petitioner has a due process right to receive meaningful notice and opportunity

to present a fear-based claim to an immigration judge before DHS deports him to a third country.[7]

Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing Petitioner and his counsel notice and an opportunity for Petitioner to seek fear-based relief from removal. (First Am. Pet. 13:10–12). For the reasons discussed above, the Court grants this requested relief.

## IV.    CONCLUSION

**IT IS HEREBY ORDRED** that Petitioner's First Amended Petition for Writ of Habeas Corpus, (ECF No. 9), is **GRANTED**.

**IT IS FURTHER ORDERED** that Petitioner must be released from detention by 4:00pm on April 26, 2026, subject to the conditions of his prior parole.

**IT IS FURTHER ORDERED** that Respondents are prohibited from imposing release conditions that substantially interfere with Petitioner's liberty, such as location monitoring, without having established the reasonableness of those restrictions, by clear and convincing evidence, at a pre-deprivation hearing.

**IT IS FURTHER ORDERED** that, prior to any re-detention of Petitioner, Petitioner is entitled to (1) notice of the reasons for revocation of his parole and (2) an opportunity to rebut those reasons in a hearing before an impartial adjudicator.

**IT IS FURTHER ORDERED** that the parties must file a Joint Status Report no later than April 28, 2026, to certify compliance with the Court's order.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek

---

[7] Because the Court finds that Petitioner succeeds on his argument under the Fifth Amendment Due Process Clause, it need not determine whether the stated policy violated the APA.

removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 25(d), Acting U.S. Attorney General Todd Blanche is substituted for the currently named Pamela Bondi, and Secretary of Homeland Security Markwayne Mullin is substituted or currently named Kristi Noem.  The Clerk of Court is kindly directed to update the docket to reflect these substitutions.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly director to **SEAL** the exhibits to the Federal Respondents' Response, (ECF No. 9-1–3).

**IT IS FURTHER ORDERED** that Federal Respondents must file a redacted version of the exhibits on the docket by **May 1, 2026,** redacting any sensitive information or personal-data identifiers.  Federal Respondents are instructed to file future documents in compliance with the text and spirit of LR IC 6-1 and FRCP 5.2(a) by redacting birth dates, fingerprints, A-Numbers, and passport numbers where applicable.

Counsel for Respondents are directed to immediately provide notice of this Order to the parties they represent.  The Clerk of Court is kindly directed to serve a copy of this Order to the Warden of Nevada Southern Detention Center in Pahrump, Nevada.

**DATED** this ___24___ day of April, 2026.

_____
Gloria M. Navarro, District Judge
United States District Court